UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Terry Lynn Olson,  Civil No. 18-124 (DWF/TNL)

          Plaintiff,

v.  **MEMORANDUM OPINION AND ORDER**

Janis Amatuzio, former Wright County
Medical Examiner; Tom Roy, Commissioner,
Minnesota Department of Corrections; and
Joan Fabian, former Commissioner,
Minnesota Department of Corrections,

          Defendants.

---

Erica Holzer, Esq., Julian C. Zebot, Esq., and Justin Philip Rose, Esq., Maslon LLP, counsel for Plaintiff.

Amie E. Penny Sayler, Esq., and Cecilie M. Loidolt, Esq., Bassford Remele, P.A., counsel for Defendant Janis Amatuzio.

Angela Behrens, Office of the Minnesota Attorney General, counsel for Defendants Tom Roy and Joan Fabian.

---

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Defendants Tom Roy and Joan Fabian (Doc. No. 8) and a Motion to Dismiss brought by Defendant Janis Amatuzio (Doc. No. 22). For the reasons set forth below, the Court grants the motions.

## BACKGROUND

In 2007, Plaintiff Terry Lynn Olson was convicted for the 1979 second-degree murder of Jeffrey Hammill, a crime Olson maintains he did not commit. (Doc. No. 1 ("Compl.") ¶ 1.) In 1979, Hammill was discovered dead from a head injury on the side of a county road. (*Id.* ¶ 17.) At the time, Hammill's death was ruled "undetermined" by the Wright County Coroner, and after an investigation, no charges were filed. (*Id.* ¶¶ 17-24.) Years later, in 2003, the Sheriff's Office re-opened its investigation of Hammill's death. (*Id.* ¶ 25.) The Sheriff's Office asked Amatuzio, the Wright County Medical Examiner at the time, to review the original autopsy, death certificate, and "new evidence." (*Id.* ¶ 28.) Based on her review, Amatuzio changed the classification of Hammill's death from "undetermined" to "homicide." (*Id.* ¶ 28.) Olson alleges that this change was based solely on the fact that investigators told Amatuzio that there was an eyewitness to the murder. (*Id.* ¶ 29.) Olson further alleges that the eyewitness (Dale Todd) gave a statement that contradicted the physical evidence, confessed under coercion, and later recanted his statement. (*Id.* ¶¶ 27-29.)

On November 4, 2005, a grand jury indicted Olson, Todd, and a third person, Ron Michaels, on various charges including first-degree murder. (*Id.* ¶ 31.) Todd pleaded guilty to "aiding an offender" in exchange for his testimony against Michaels and Olson, while Michaels and Olson maintained their innocence and went to trial. (*Id.*) Michaels went to trial in November 2006, during which Todd changed his testimony and Michaels was acquitted. (*Id.* ¶¶ 32-33.) In response, the state retracted Todd's cooperation

agreement and Todd received a three-year prison sentence. (*Id*. ¶ 34.) Olson also alleges that shortly before Olson's trial, Todd told a defense investigator that Olson was innocent (*id*. ¶ 36), and that he told an inmate that he was being pressured to testify against Olson (*id*. ¶ 38). At Olson's trial, Todd testified that he, Olson, and Michaels were involved in Hammill's death. (*Id*. ¶ 45.) The jury also heard testimony that Hammill was killed with a "blunt, heavy object," and that Hammill had an abrasion on his wrist, which was likely a "defense-type-injury" that was consistent with Hammill trying to "ward off a blow." *State v. Olson*, No. A08-0084, 2009 WL 2147262, at *4 (Minn. App. Oct. 20, 2009), *rev. denied* (Minn. Oct. 20, 2009).[1] In addition, several inmates who served time with Olson testified that he confessed to killing Hammill. *Id*. at *5. Ultimately, the jury found Olson guilty of second-degree murder. *Id*. at *3.

Olson appealed his conviction and filed two petitions for post-conviction relief. His conviction was affirmed and both post-conviction petitions were denied. *Id*. at *6; (affirming Olson's convictions); *Olson v. State*, No. A11-696, 2012 WL 254485 (Minn. App. Jan. 30, 2012) (affirming denial of post-conviction relief), *rev. denied* (April 25, 2012); *Olson v. State*, No. A14-1632, 2015 WL 4877691 (Minn. App. Aug. 17, 2015) (same), *review denied* (Minn. Nov. 17, 2015).

---

[1] The Court may consider the public record related to Olson's conviction as it is necessarily embraced by the Complaint. *See Porous Media Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

Olson then filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. (Compl. ¶ 74.) In support, Olson claimed that the State concealed evidence and knowingly sponsored false testimony, that he received ineffective assistance of trial and appellate counsel, as well as various violations of due process, equal protection, and cruel and unusual punishment. The Petition was dismissed without prejudice on the grounds that it was a mixed petition, presenting both exhausted and unexhausted claims, and the Court granted Olson a period of thirty days to amend his petition by deleting unexhausted claims. (*Id.*) Before Olson filed an amended petition, the matter was resolved by a stipulation between the parties, pursuant to which the State agreed to sentence Olson under the 1980 sentencing guidelines and Olson agreed to forego any future lawsuits against the county. (Doc. No. 11 ("Behrens Aff.") ¶ 2, Ex. 2 ¶¶ 2-3; Compl. ¶ 75.)[2] In addition, the state agreed to the issuance of a conditional writ directing that Olson's sentence be amended pursuant to the guidelines in effect in 1980 with a criminal history of zero. (Behrens Aff. ¶ 2, Ex. 3 ¶ 4.) The state explicitly stated in the stipulation that "in making this stipulation, [the State] does not admit any fault or wrongdoing in the original sentence but agrees to this amendment in the interest of justice and equity and in an effort to bring finality to this proceeding and the underlying conviction." (*Id.* ¶ 6.)

---

[2] Olson maintained that he was given an illegal sentence because had he been charged and prosecuted in 1979, he likely would have received an earlier release date.

Pursuant to and consistent with the stipulation, the Court issued a Writ and Order remanding the case to the state court with the expectation that it resentence Olson under the 1980 sentencing guidelines, and upon resentencing immediately release Olson from custody. (*Id*. ¶ 2, Ex. 3.) In September 2016, the state district court resentenced Olson and released him based on the amended sentence. (*Id*. ¶ 2, Ex. 4 ¶ 2.) Pursuant to the parties' subsequent stipulation, the Court vacated the Writ and Order and dismissed Olson's petition for a writ of habeas corpus with prejudice. (*Id*. ¶ 2, Ex. 5.)

In January 2018, Olson filed this action asserting the following causes of action: (1) 42 U.S.C. § 1983-Substantive Due Process (against Amatuzio); (2) Negligence (against Amatuzio); (3) 42 U.S.C. §1983-Substantive Due Process (against Roy and Fabian); (4) 42 U.S.C. § 1983-Equal Protection (against Roy and Fabian); (5) 42 U.S.C. § 1983-Eighth Amendment (against Roy and Fabian); and (6) 42 U.S.C. § 1983-Prohibition Against *Ex Post Facto* Laws (against Roy and Fabian). Defendants move separately to dismiss all claims.

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th

Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp.*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. *Heck* Doctrine

As a threshold matter, Defendants argue that Olson's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a claim is not cognizable under section 1983 when a judgment in favor of a plaintiff on the claim would necessarily imply that the plaintiff's state conviction or sentence is invalid, unless the conviction has been invalidated. *See Heck*, 512 U.S. at 487; *Wilson v. Lawrence Cty., Mo.*, 154 F.3d 757, 760 (8th Cir. 1998) (citing *Heck*). To demonstrate the invalidity of the fact or length of

6

confinement, a plaintiff must establish that his conviction or incarceration has been "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489. A decision that does not so reverse, expunge, or impugn a conviction or sentence is insufficient to satisfy *Heck*. *See Marlowe v. Fabian*, 676 F.3d 743, 747 (8th Cir. 2012) (affirming the dismissal of a section 1983 claim under *Heck*; holding that the decision to remand plaintiff's habeas claim and encouraging the department of corrections to seek a resolution did not invalidate plaintiff's incarceration); *Cooke v. Peterson*, Civ. No. 12-1587, 2012 WL 6061724, at *2 (D. Minn. Dec. 6, 2012) (holding that *Heck* bars a section 1983 claim based on the allegedly unlawful duration of incarceration; explaining that plaintiff's release following an administrative appeal is not a prior invalidation of his conviction or sentence).

Here, Olson argues that his release from prison constitutes a favorable termination of his wrongful incarceration. Specifically, Olson submits that his release in September 2016 was the direct result of the Court's favorable consideration of the stipulated Writ of Habeas Corpus. (Behrens Aff. ¶ 2, Exs. 2, 3.) In addition, Olson argues that the Court acknowledged the injustice of Olson's continued incarceration by ordering his release "in the interests of fairness, justice, and equity" and that his sentence was "called into question" by the Court's issuance of the writ. (*Id.*) Olson highlights that in the stipulation itself, the parties agreed that "[i]n the interest of fairness, justice, and equity the prosecuting authority for Wright County, Minnesota agrees to the issuance of a Conditional Writ of Habeas Corpus that the sentence imposed in this matter be amended

pursuant to the guidelines in effect in 1980 with a criminal history score of zero." (*Id.* ¶ 2, Ex. 2 ¶ 4.)

The Court disagrees and determines that Olson's section 1983 claims are barred by *Heck*. First, Olson's conviction for second-degree murder is intact, as it has not been reversed on direct appeal, expunged by executive order, declared invalid, or called into question by the issuance of a writ of habeas corpus. Second, because Olson's conviction stands, the only relief Olson obtained was a shorter sentence. Olson, however, has not shown that the length of his incarceration was "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *See Heck*, 512 U.S. at 489. Instead, his shortened sentence was achieved via a stipulation between the parties and wherein the state expressly disavowed any illegality with respect to Olson's sentence.[3] In addition, while the Court did issue a writ to facilitate Olson's sentencing under the 1980 guidelines, that writ was conditional and the Court later vacated the writ and dismissed Olson's habeas claims with prejudice.[4]

---

[3]  The stipulation and the Court's subsequent writ did not mention the Department's administration of Olson's sentence. Therefore, there is no finding that the Department unlawfully incarcerated Olson. In addition, Olson does not allege that Amatuzio imposed Olson's sentence. Indeed, Olson's claims against Amatuzio involve his conviction, which remains intact.

[4]  This fact distinguishes this case from *Wilson v. Lawrence Cty., Mo.*, 154 F.3d 757, 761 (8th Cir. 1998). In *Wilson*, the Eighth Circuit Court of Appeals held that a gubernatorial pardon constituted an expungement by executive order. *Wilson*, 154 F.3d at 760. However, in *Wilson*, there was no doubt that the pardon invalidated the offender's conviction and satisfied *Heck*. *Id*. (noting that the pardon specifically stated that the plaintiff did not commit the underlying crime). Here, the habeas stipulation
(Footnote Continued on Next Page)

The Court finds that the Eighth Circuit Court of Appeals' decision in *Marlowe* is instructive. In *Marlowe*, the plaintiff (Marlowe) was serving a sentence for first-degree criminal sexual conduct. 676 F.3d at 745. After Marlowe's release under supervision, Marlowe was unable to find approved housing and his supervised release was revoked. *Id*. Marlowe filed a petition for a writ of habeas corpus alleging unlawful imprisonment. *Id*. at 746. The petition was denied and, on appeal, remanded to the district court without ordering Marlowe's release. *Id*. However, the Minnesota Court of Appeals instructed the Department of Corrections to "consider restructuring Marlowe's release plan" and to "seek to develop a plan that can achieve Marlowe's release from prison and placement in a suitable and approved residence." *Id*. (citation omitted). A few months later, a suitable residence found space, the county agreed to provide supervision, and Marlowe's counsel indicated that he would consider the habeas matter "resolved" if Marlowe was released. *Id*. Marlowe was released and subsequently sued officials at the department of corrections under section 1983 for violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments. Specifically, Marlowe argued that the officials unlawfully imprisoned him by incarcerating him beyond the date on which he became eligible for supervised release. *Id*. at 745. The district court granted summary judgment in favor of defendants after finding that Marlowe's section 1983 claims were barred by *Heck*. Marlowe appealed and

---

(Footnote Continued From Previous Page)
addressed only Olson's sentence, not his conviction, and expressly disavowed any illegality with respect to his sentence. The writ did not find or imply that the Department unlawfully incarcerated Olson.

9

the Eighth Circuit Court of Appeals affirmed the decision, explaining that to avoid being barred by *Heck*, a plaintiff must show a "favorable termination by state or federal authorities even when he is no longer incarcerated." *Id.* at 747 (citation omitted). Despite the fact that the Minnesota Court of Appeals remanded his habeas claim to the trial court, this action did not satisfy the "favorable termination" requirement because Marlowe's incarceration was not "reversed, expunged, invalidated, or called into question." *Id.*

Similarly here, by issuing the conditional writ pursuant to the parties' stipulation, the Court did not invalidate or call into question the legality of Olson's imprisonment. Instead, the Court directed resentencing based on the parties' stipulation and later vacated the writ and dismissed Olson's habeas petition with prejudice. Therefore, the Court concludes that Olson's section 1983 claims are barred by *Heck*.[5] Because the Court concludes that Olson's section 1983 claims are barred by *Heck*, it need not reach the alternative arguments for dismissal of those claims. Counts I, III, IV, V, and VI are

---

[5] In the alternative, Olson argues that the Court should decline to apply *Heck* given the unique factual circumstances that led to Olson's release. In particular, Olson asserts that because he abandoned his habeas petition only because he was released, the favorable-termination rule should not be required. However, under the law of this Circuit, *Heck* still applies to the facts of this case. *See, e.g.*, *Newmy v. Johnson*, 758 F.3d 1008, 1011 (8th Cir. 2014) (noting a circuit split on whether *Heck* bars section 1983 claims when the plaintiff cannot bring a habeas action; explaining that the Eighth Circuit adheres to the conclusion that *Heck's* favorable termination rule still applies when a plaintiff is not incarcerated (and therefore cannot bring a habeas claim)); *Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007) (holding that *Heck* applies even when habeas relief is unavailable).

properly dismissed with prejudice.

### III. Negligence (against Amatuzio)

Olson also asserts a negligence claim against Amatuzio. Amatuzio argues that this claim is barred by the statute of limitations and otherwise fails to state a claim for relief. Under Minnesota law, the statute of limitations for a negligence claim is six years. Minn. Stat. § 541.05, subd. 1(5). The cause of action for negligence accrues from the date of the occurrence that caused the injury. *Hermeling v. Minn. Fire & Cas. Co.*, 548 N.W.2d 270, 274 (Minn. 1996) (*overruled on other grounds by Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401 (Minn. 2000)). Here, Olson alleges that Amatuzio was negligent by "relying solely on Dale Todd's testimony in changing the manner of Hammill's death from 'undetermined' to 'homicide,' and by failing to conduct an objectively reasonable investigation as to the manner of Hammill's death." (Compl. ¶ 88.) Amatuzio changed the classification of Hammill's death in 2005 and during her testimony at Olson's trial in 2007. Olson, however, did not file the present action until 2018, well after the six-year statute of limitations had run.

Olson argues that the statute of limitations was tolled by fraudulent concealment. Specifically, Olson argues that Amatuzio testified under oath at trial that she changed Hammill's manner of death from undetermined to homicide based on forensic science, but that she concealed the true reason that she changed the death classification, which was the change was made based on the statements of Todd. (*Id*. ¶¶ 40-41.) Olson also asserts that he did not learn of Amatuzio's concealment until January 18, 2012, when

Amatuzio stated in an affidavit that the sole reason she changed the manner of death was Todd's statement to the police in 2003 and that, absent that statement, she would not have changed the death certificate. (*Id*. ¶¶ 43-44.)

Normally, the expiration of a limitations period is an absolute bar to the plaintiff's claim. *Minn. Laborers Health & Welfare Fund v. Granite Re, Inc.*, 844 N.W.2d 509, 514 (Minn. 2014). However, a defendant's fraudulent concealment will toll the statute of limitations until the plaintiff discovers or has reasonable opportunity to discover the concealed facts. *See Hydra–Mac, Inc. v. Onan Corp*., 450 N.W.2d 913, 918 (Minn. 1990). Fraudulent concealment is the intentional and affirmative concealment of the facts which establish the cause of action. *Id*. In order to toll the limitation period on the grounds of fraudulent concealment, a plaintiff must establish the following: "(1) Defendant['s] concealment of Plaintiff['s] cause of action, (2) failure by Plaintiff[ ] to discover the existence of [his] cause of action, and (3) due diligence by Plaintiff[ ] in attempting to discover the claim." *In re Milk Prods. Antitrust Litig*., 84 F. Supp. 2d 1016, 1022 (D. Minn. 1997). Here, the Court determines that Olson failed to establish that tolling applies. Notably, Olson has not sufficiently pleaded that Amatuzio concealed the very existence of the facts which establish the cause of action or that Olson exercised due diligence to discover his claim. Olson was represented by counsel at his trial, listened to Amatuzio testify, and through his attorney had the opportunity to interview and cross-examine Amatuzio. While Olson alleges that Amatuzio failed to offer information relevant to her reliance on Todd's statement, Olson has not pleaded facts showing

diligence on his part to attempt to discover the facts underlying his claim.  In particular, Olson could have sought information about Amatuzio's testimony during trial via cross-examination.  Therefore, even accepting Olson's allegations as true, there is no basis to determine that Olson could not have reasonably discovered the facts regarding Amatuzio's testimony during trial.  The Court concludes that the equitable doctrine of fraudulent concealment does not toll the statute of limitations.  Therefore, Olson's negligence claim against Amatuzio is barred by the statute of limitations.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' motions to dismiss (Doc. Nos. [8] & [22]) are **GRANTED** and Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 27, 2018         s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge